AARON T. PENN v. STANDARD LIFE INSURANCE COMPANY.

(Filed 7 November, 1912.)

1. Contracts—Courts—Interpretation.

The courts can only interpret a contract lawfully entered into between parties legally and mentally competent to make it.

2. Insurance — Policy Contract — Interpretation — Accident — Independent Cause.

A policy of accident insurance creating a liability on the part of the insurer for injuries sustained by the insured "directly and independently of all other causes, through external, accidental, and violent means," is lawful and enforcible by the insurer in accordance with its terms.

3. Same—Instructions.

In an action to recover under an accident insurance policy for the loss of eyesight whereunder the insurer was liable for injuries sustained by the insured "directly and independently of all other causes, through external, accidental, and violent means," there was evidence tending to show that the plaintiff's eyesight was lost by reason of an old cataract existing before the accident, as well as that the accident had caused the loss of vision. The

PENN *v.* INSURANCE CO.

court charged the jury that if they found by the greater weight of the evidence that the plaintiff's loss of his eyesight was caused directly and independently of all other causes, through external, accidental, and violent means, to answer for the plaintiff; but otherwise if the accident operated in connection with another cause: *Held*, the charge was correct and not objectionable on the ground that it would deny a recovery in a case where there was a former malady and an accident, and the latter directly produced the injury as the efficient cause thereof, though the malady itself would have resulted in the same injury, at a later time.

4. Insurance — Policy Contracts — Interpretation—Accidents—Independent Cause—Definitions—Liability.

In construing a policy of accident insurance against injuries sustained by the insured "directly and independently of all other causes, through external, accidental, and violent means," it is *Held,* (1) When an accident causes a diseased condition which, together with the accident, resulted in the injury or death complained of, the accident alone is to be considered the cause of the injury or death; (2) When at the time of the accident the insured was suffering from some disease, but the disease had no causal connection with the injury or death resulting from the accident, the accident is to be considered as the sole cause; (3) When at the time of the accident there is an existing disease which, coöperating with the accident, resulted in the injury or death, the accident cannot be considered as the sole cause, or as the cause independent of all other causes.

5. Insurance — Policy Contracts — Interpretation—Accidents—Independent Cause—Proximate Cause—Causal Connection.

When the loss under a policy of accident insurance is made, by its terms, to depend upon injury or death "resulting from accident, independent of all other causes," the rule of proximate and remote causes cannot be applied, the question being, upon an issue of fact presented, whether the disease with which the insured was suffering at the time of the accident had causal connection with the injury inflicted by the accident.

6. Instructions—Alternate Theories—Appeal and Error—Special Requests for Instructions—Procedure.

The failure of the trial judge to charge the jury upon alternate theory correctly stated and arising upon the evidence in the case, does not necessarily render the charge incorrect, and no reversible error will be held on appeal for the mere failure of the judge to charge the alternate theory in the absence of a special instruction asked and refused.

**7. Instructions—Construed as a Whole—Appeal and Error.**
> The charge of the trial judge to the jury should be construed as one connected whole, and not in detached portions, and it will not be held for error when, thus considered, the meaning of the charge clearly appears, and the jury could not have been misled.

APPEAL by plaintiff from *Adams, J.,* at August Term, 1912, of ROCKINGHAM.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Walker.*

*Morehead & Morehead, Sapp & Williams, and Justice & Broadhurst for plaintiff.*
*G. S. Bradshaw and T. H. Calvert for defendant.*

WALKER, J. This is a petition to rehear this case, which was decided by us at Fall Term, 1911, and is reported in 158 N. C. at p. 29, where the facts are stated. There is no new question in the case, as now presented, but the learned counsel for the plaintiff think that we have misapprehended the true nature and meaning of the charge of *Judge Adams,* who presided at the trial, and that, if properly construed, it would deny a recovery in a case where there was a former malady and an accident and the latter directly produced the injury as the efficient cause thereof, provided the malady itself would have resulted in the same injury, though at a later time. It is also said that certain expressions of the Court in the opinion indicate that it was clearly not the intention so to decide. As to the latter suggestion, we agree with counsel, but we do not as to the former.

What the Court intended to decide, and did decide, was that there must have been a union of the two causes, so that they coöperated in producing the injury, and if the accident was the sole cause, or produced the result independent of all other causes, recovery could be had in such a case, and we are of the opinion now, as we were at the former hearing, that the judge so charged the jury. The instruction will not bear any other construction, as will appear from the following extract:

"If you find from the evidence, and by the greater weight of it, that the plaintiff has suffered the entire loss of the sight of his eye; that the loss of his sight is irrecoverable; that the loss

160—26

was caused directly and independently of all other causes, through external, accidental, and violent means, your answer to the second issue will be 'Yes.' If you do not so find, your answer will be 'No.' " The other part of the instruction merely informed the jury that if the accident did not cause the injury directly and independently of all other causes, but operated in connection with another cause, the case would be different, and the jury must have so understood it.

It must be remembered that we are construing a contract not of our making, and the terms of which we cannot alter, and not discussing the law of negligence and the doctrine of proximate cause. The plaintiff and defendant had the legal right to make any contract with each other, not unlawful in itself, both being at arm's-length and in the full possession and enjoyment of their mental faculties. We must decide the case, therefore, not by what we may think would have been a wiser and more discreet contract on the part of the plaintiff if he could have procured such a one, but by what is written in the contract actually made by them. Courts are not at liberty to rewrite contracts for the parties. We are not their guardians, but the interpreters of their words. We must, therefore, determine what they meant by what they have said—what their contract is, and not what it should have been. We said as much in our former opinion: "As long as parties who are capable of doing so shall be permitted to make their own contracts, it is the plain duty of the Court to enforce them as they are written, unless fraud or public policy shall intervene. *Binder v. Accident Association,* 127 Iowa, 25 (35). While the rule is thoroughly settled that policies of this and like character are to be construed liberally, and that ambiguous provisions, or those capable of two constructions, should be construed favorably to the insured and most strongly against the insurer, plain, explicit language cannot be disregarded, nor an interpretation given the policy at variance with the clearly disclosed intent of the parties. Taking the policy in the case at bar by its four corners, it will admit of but one construction. *White v. Insurance Co.,* 95 Minn., 77. In *Carr v. Insurance Co.,* 100 Mo. App., 602, the Court said that the question of proximate and immediate cause is not raised under the condi-

tions of a policy which in terms excludes disease or bodily infirmity, and which could have no more force than the general provision, 'independent of all other causes.' See, also, *Mut. Association v. Fulton,* 79 Fed. Rep., 423. If the jury had found that the injury was caused by the sum of two causes, that is, that the accident and the preëxisting cataract and diseased condition of the eye were together responsible for the subsequent blindness, the plaintiff could not have recovered, as the injury must have resulted from the accident, 'independent of all other causes.' "

We did not before fail to consider, in its full scope, the language of the learned judge in charging the jury, and, after a more careful examination of his instructions, we do not think that, in word or phrase, he so narrowed the terms of the insurance contract as to prejudice the plaintiff's rights, but that he correctly stated the law which is applicable to the case.

There was a disputed question of fact presented by the testimony, whether the plaintiff was suffering from a cataract on his eye at the time of the alleged fall, or whether the fall produced a cataract. In addition to the testimony recited in the brief for the petitioner, testimony by Dr. McGee was given as follows: "He complained of pain in his left eye and in the lower third thigh, right side. On examination of his eye, I found that he had an old cataract, and so told him. He had particles of dust around his eye. I put a little antiseptic solution on that. I found no evidence of traumatism or blow on the head, nor any inflammation. I found an old cataract and told him it was from an old injury; that it was produced by some injury in the past. It is possible to have a blow on the eye or on the head that will cause a rupture of the lens, and cataract follows. I found no sign of an injury resulting from a fall from the train. It takes a cataract some time to form and develop from a traumatic injury. The cataract I saw had been forming for months." The petitioner, as we understand, concedes, both in the petition and in the brief filed in support of the petition, that the decision is right in holding that if the jury had found that the injury was caused by the sum of two causes—that is, that the accident and preëxisting cataract and

diseased condition of the eye were together responsible for the subsequent blindness and united sensibly and efficiently in producing it—the plaintiff could not have recovered, as the injury must have resulted from the accident, "independent of all other causes."

Reasoning from the authorities cited in the briefs filed by both parties in the appeal, and in the former opinion of the Court, and the admittedly correct proposition above stated, it appears that under policy contracts such as the one under consideration, three rules may be stated:

1. When an accident caused a diseased condition, which together with the accident resulted in the injury or death complained of, the accident alone is to be considered the cause of the injury or death.

2. When at the time of the accident the insured was suffering from some disease, but the disease had no causal connection with the injury or death resulting from the accident, the accident is to be considered as the sole cause.

3. When at the time of the accident there was an existing disease, which, coöperating with the accident, resulted in the injury or death, the accident cannot be considered as the sole cause or as the cause independent of all other causes.

The petitioners rely on the case of *Fetter v. Casualty Co.,* 174 Mo., 256. That was an action on a policy which insured the life of the plaintiff's father against bodily injuries sustained through accidental means, and the company promised to pay a certain sum if death should result from such injuries, independent of all other causes. It appeared that the deceased suffered a fall, producing a rupture of a kidney, from which rupture followed a hemorrhage, which caused his death. He submitted to an operation and died just less than thirty days from the day of his fall. An autopsy showed that one of the kidneys had been ruptured and that the lower end of the kidney was cancerous. There was a judgment for the plaintiff, and the appellate court affirmed the judgment. Several doctors had been examined as experts, differing in their opinion on the question of fact whether a cancerous condition of the kidney existed before the fall, and with the fall had produced the rupture, or

whether the fall itself had produced the rupture and this had brought about, in that short time, the cancerous condition. The Court held that, on this conflict of testimony, the jury had the right to find that the ruptured kidney caused the cancerous growth, and that the rupture of the kidney was caused by the fall "independent of all other causes," and said: "Under those facts and in the light of the scientific evidence, who can say with certainty that the blow which ruptured the kidney did not also cause the cancerous growth? On the question of whether or not the blow caused the cancer, if the jury had found either way, the verdict would have had honest, intelligent, scientific testimony to support it." This part of the opinion in that case was sufficient to dispose of the appeal, and the further discussion of the ordinary rule of proximate cause was unnecessary to the decision of the case, and, we respectfully think, was erroneous as applied to a policy which permits recovery only when the injury or death results from the accident solely or independent of all other causes.

The rules of proximate and remote causes, as understood in the law of negligence, cannot be justly or safely applied under a contractual stipulation that the injury or death must have "resulted from the accident, independently of all other causes," and when an issue of fact is presented whether the person was suffering from a disease which had causal connection with the injury or death.

As further evidence of the fact that a discussion of the doctrine of remote and proximate causation was not essentially involved in the case of *Fetter v. Casualty Co., supra,* and that what was decided in that case does not necessarily conflict with the charge of the court in this case, we may well refer to two or three expressions of the Court, which seem to place its decision upon the ground that the accidental fall against the table, while attempting to raise the upper window sash, was the real, efficient cause of the death, and all sufficient. *Judge Valliant* said: "There is no question but that the fall of the insured against the table, striking his side heavily against its edge, was accidental, and that it produced the rupture of the kidney which caused the hemorrhage which caused his death. All the wit-

nesses concur in that. . . . The undisputed evidence and conceded facts make out a *prima facie* case for the plaintiffs, and the defense that there was a remote predisposing cause of the death was given as full and fair consideration as the defendant was entitled to, and there is not sufficient in the evidence bearing on it to justify any impeachment of the verdict. The theory of the instructions given at the request of the plaintiffs is that if the death of the insured resulted from the accidental rupture of his kidney, the plaintiffs were entitled to recover. These were supplemented by the modified instruction for defendant that the plaintiffs could not recover unless the 'accident was the sole and only direct cause of death.' Those instructions taken together put the case on the correct theory, and they include whatever there legitimately was in the defendant's theory of any other cause. There was really so little in the remote-predisposing-cause theory that the court would have been justified in ignoring it altogether."

A discussion of proximate and remote causes can be pertinent only when it appears that there have been two or more causes and when a judicial selection must be made as between the different causes, and a choice made of one as the proximate cause. In such a case, two causes have operated together, and we are looking for the one which was the efficient, and therefore the legal, cause of the injury. This is entirely different from a case in which we are dealing with the condition of a policy, that the injury or death must have resulted from the accident "independently of all other causes."

Though the Court, in *Freeman v. Accident Association,* 156 Mass., 350, recognized the application of some sort of a rule of proximate cause, it stated it in a qualified or limited manner, as follows: "When different forces and conditions concur in producing a result, it is often difficult to determine which is properly to be considered the cause, and, in dealing with such cases, the maxim, *causa proxima non remota spectatur,* is applied. But this does not mean that the cause or condition which is nearest in time or space to the result is necessarily to be deemed the proximate." And then the Court proceeded to affirm an instruction substantially like the one excepted to in this case, as is hereafter pointed out.

In *White v. Accident Insurance Co.*, 95 Minn., 77, the Court said that the rule of proximate cause, as applied to actions of negligence, cannot be applied in its full scope to contracts of this nature. The Court, in that case, so clearly stated the accepted rule, that we give its own language: "Similar policies have been before both the State and Federal courts, and the consensus of judicial opinion is that, subject to the exceptions contained in the policy, if the injury be the proximate cause of death, the company is liable, but if an injury and an existing bodily disease or infirmity concur and coöperate to that end, no liability exists. If, however, the injury be the cause of the infirmity or disease—if the disease results and springs from the injury—the company is liable, though both coöperate in causing death. The distinction made in this particular is found in that class of cases where the infirmity or disease existed in the insured at the time of the injury, and, on the other hand, that class of cases where the disease was caused and brought about by the injury. And even in cases where the insured is afflicted at the time of the accident with some bodily disease, if the accidental injury be of such a nature as to cause death solely and independently of the disease, liability exists."

Coming, then, to a particular examination of the instruction objected to, it seems to fall naturally within the terms of the third rule above stated, "that when, at the time of the accident, there was an existing disease which, together with the accident, resulted in (that is, had causal connection with) the injury or death, the accident cannot be considered as the sole cause or as the cause independent of all other causes." It should be understood that in the case of an accident resulting in injury or death, if there was an existing disease having also a causal connection therewith, it is not necessary that the disease should itself have been one which would ultimately have proved fatal, or that it should be, of itself, sufficient to have caused the injury or death. Under the rule that, where the injury or death has been caused by the sum of two causes, it is sufficient to prevent a recovery on the policy, if any ordinary disease, not itself necessarily fatal, should contribute with the accident to cause the death, that is, if without the presence of the disease the

accident itself would not have been sufficient to have caused the injury or the death. And so in this case, it would have been sufficient to have shown a diseased condition of the eye which, together with the alleged accident, resulted in blindness. It is not necessary in such a case to show that the disease of the eye was such that it would ultimately have resulted in blindness. In this view of the case, the plaintiff certainly has nothing to complain of in the instruction given. If the verdict and judgment had been for the plaintiff, the defendant might have had ground of complaint, in that the instruction virtually told the jury that the plaintiff could recover unless they should find that the blindness was caused by the combined effect of the alleged accident and such a disease of the eye as would ultimately have resulted in blindness, because both causes might have produced the blindness, without either being completely sufficient to that end. The instruction of the court must be read in view of the facts in the case, and with the alternative proposition stated: "But if you find from the evidence and by the greater weight of it that the plaintiff has suffered the entire loss of sight of his eye; that the loss of his sight is irrecoverable; that the loss was caused directly and independently of all other causes, through external, accidental, and violent means, your answer to the second issue will be 'Yes.'" Not only is the instruction within the third rule above stated, upon reason, but there is authority (*Freeman v. Accident Association,* 156 Mass., 351) clearly sustaining, against attack by the beneficiary under such a policy, an instruction substantially the same as the one objected to in the case at bar, and given upon facts practically similar to those appearing in this record. In the *Freeman case* it was proved that the insured died of peritonitis localized in the region of the liver. There was evidence indicating that he had previously had peritonitis in the same part, and that the previous disease had produced effects which rendered him liable to a recurrence of it. The Court approved the charge under review, which instructed the jury: "The question as to whether or not peritonitis, if that caused his death, is to be deemed a disease, within the meaning of this policy, so far as to prevent a recovery, depends upon the question whether or not, before

the time of the fall and at the time of the fall, he had then the disease—was then suffering with the disease. If he was, then in the sense of the policy, although aggravated and made fatal by the fall, he cannot recover." In the brief filed in support of the petition to rehear, counsel say: "Even if he had a cataract which existed prior to the fall, and, notwithstanding the cataract, the fall did cause the loss of his sight, and would have caused it if he had not a cataract, he would be entitled to recover." For the purpose of the argument, it may be admitted that this states a correct proposition, and yet if it does, it is merely an alternative theory that might have been submitted to the jury, and it does not follow that the instruction excepted to was erroneous. It is too late now to urge that the court should have instructed the jury on that theory of the case, because if a correct one, a special instruction should have been asked. *Simmons v. Davenport,* 140 N. C. (Anno. Ed.), 407, and cases cited.

The decision of this Court, that injury or death caused by the sum of two causes, namely, accident and disease, is not covered by the policy, is sound, as we think. The instruction excepted to, when properly considered, is but one way of stating the rule, and is well within the rule, and on the facts testified to, the jury had the right to find that the blindness was caused by the alleged accident combined with a disease which affected the eye at the time of the accident.

It would be idle and useless to repeat what was said in our former opinion about this case and the rule which controls its decision. We then discussed the matter at great length, because of the importance of the principle involved, and cited numerous authorities, which we think sustain our view. Before taking final leave of the case, we will refer to *Fishblate v. Insurance Co.,* 140 N. C., 593, cited by the petitioner (plaintiff) on this rehearing, in which an instruction substantially similar to the one under examination was given to the jury and was upheld by this Court, *Justice Hoke* saying: "This charge might be held on the first issue." What was the first issue to which this reference was made? It was this: "Was the plaintiff's eye lost as a result directly or independently of all other causes, from

bodily injuries sustained through external, violent, and accidental means?" The same inquiry we have in the case at bar? It is true, the learned judge added, "and is perhaps more favorable to the defendant on that issue that he could require"; still this does not neutralize or destroy what had previously been stated, and, besides, he cites with approval *Freeman v. Accident Association,* 156 Mass., 357, which we also cited in our former opinion, and which, it seems to us, is a direct authority in support of the instruction of *Judge Adams.* The latter did not intend to say that the mere existence of a previous malady at the time of the accident would defeat recovery, if, by itself, it would ultimately have produced the injury, although it did not coöperate with the accident in causing it, but that if the two, accident and disease, acting together, were the producing causes of it, the plaintiff could not recover, as in that case the accident was not, within the terms of the policy, the direct and independent cause, but the injury was produced "by the sum of these two causes." *Ward v. Insurance Co.,* 85 Neb., 471; *Casualty Co. v. Shields,* 155 Fed. Rep., 54; *Cary v. Insurance Co.,* 127 Wis., 67; *Accident Association v. Shyrock,* 73 Fed. Rep., 423; *Accident Association v. Fulton,* 79 Fed. Rep., 423; *White v. Insurance Co.,* 95 Minn., 77; *Binder v. Accident Association,* 127 Iowa, 25 (35), and 1 Cyc., 262, and note 64, where the doctrine is tersely stated and the cases bearing upon it are collected.

The judge's charge should be construed as one connected whole, and not in detached or isolated portions (*Kornegay v. R. R.,* 154 N. C., 392), and when thus considered, the meaning of the court clearly appears, and we think the jury could not have been misled by the instruction.

Petition dismissed.